Maria SAGGESE and Vito Saggese, her husband, Plaintiffs,

v.

Alfred GONNELLI and United States Postal Service, Defendants.

No. Civ. 83–589.

United States District Court, D. New Jersey.

April 14, 1983.

Harkavy, Goldman, Goldman & Caprio by Abraham I. Harkavy, West Orange, N.J., for plaintiffs.

W. Hunt Dumont, U.S. Atty. by Lorraine S. Gerson, Asst. U.S. Atty., Newark, N.J., for defendants.

## OPINION

BIUNNO, Senior District Judge.

This suit was begun by complaint filed in the Superior Court of New Jersey, Law Division, Essex County, Docket L 000659–83. It seeks damages for personal injuries sustained by Maria Saggese, a pedestrian, who was struck by a U.S. Postal Service truck, No. 6402090, on February 13, 1981, while she was crossing Market Street in Newark, walking north on the westerly crosswalk of the intersection of Raymond Plaza East and Market Street (next to Penn Station in Newark). The truck was driven by defendant Alfred Gonnelli, an employee of the Postal Service then acting within the scope of his employment. A separate count seeks damages per quod by her husband, Vito Saggese.

Although the file in this court does not disclose the details, it was established at oral argument that plaintiffs duly filed an administrative claim with the U.S. Postal Service as a precondition to suit, under the Federal Tort Claims Act, chapter 171 of Title 28, U.S.C., or 28 U.S.C. § 2671, et seq.

The claims were considered and, by letter dated July 20, 1981, were denied (this date was provided on oral argument). Under 28 U.S.C. § 2401(b), tort claims against the United States are forever barred unless presented in writing within two years after accrual, or "unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." The ambiguity of this language is obvious, since the statute is silent on whether it means "whichever is less" or "whichever is longer."

If a tort claim accrues on May 31, 1980, the administrative claim must be presented within two years thereafter or, in this example, on or before May 31, 1982. It also says that suit must be begun within six months of the date of mailing of notice of final denial. These provisions, on their face, suggest that the time for filing suit is a variable, depending on when the administrative claim is filed and finally denied.

Thus, in the hypothetical example, if the administrative claim is filed on June 2, 1980, and final denial is mailed on June 3, 1980, suit cannot be filed later than December 3, 1980, and see *Yedwab v. U.S.A.*, 489 F.Supp. 717 (D–N.J., 1980) for a discussion of how to calculate a period marked as "within X months" after a specified date.

On the other hand, the claimant in the hypothetical may file the administrative claim as late as May 31, 1982, and still file suit within 6 months of the mailing of the final denial of the claim.

Yet, such suits are allowed only because the United States has consented to be sued, waiving its sovereign immunity to the extent and under the terms and conditions specified by Act of Congress in making the conditional waiver. Thus, the foregoing discussion is complicated by the provision, in 28 U.S.C. § 2674, that:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * * ".

Suppose, as in this case for personal injury, a private individual may defend by raising the 2-year statute of limitations, N.J.S. 2A:14–2. May the United States raise the 2-year statute of limitations, as a private individual could, even though the 2 years for filing claim plus mailing of final denial have taken more than 2 years?

Or, suppose that 28 U.S.C. § 2680(h) had not excluded claims for libel or slander from the waiver of immunity; the New Jersey statute, N.J.S. 2A:14–3, sets one year as the statute of limitations for such suits against a private individual; did the Congress intend that the United States be open to suit beyond the time when a private individual would be?

Even more incisive is the question raised when the suit is for wrongful death under New Jersey's version of Lord Campbell's Act, N.J.S. 2A:31–1, et seq. It has been settled law since the original enactment that since the cause of action was unknown to the common law and was created by statute, the requirement that suit be brought within 2 years of death "and not thereafter", N.J.S. 2A:31–3, is not a statute of limitations but is one of the essential elements which the plaintiff must prove as a part of the prima facie case. See the discussion of the subject in *Holzsager v. Warburton*, 452 F.Supp. 1267 (D–N.J., 1978) and especially the Appendix with excerpts from the venerable HARRIS, "Pleading and Practice in New Jersey." In such a case, if a private individual *is not liable* when suit for wrongful death is filed more than 2 years after death, may the United States be liable thereafter?

The final complication in this regard arises from language in 28 U.S.C. § 2675 which applies when the administrative claim is timely filed, but the agency does not act. The provision is that:

> "The failure of an agency to make final disposition of a claim within six months after it is filed shall, *at the option of the claimant any time thereafter,* be deemed a final denial of the claim for the purpose of *this section*." (emphasis added).

Does this mean that if an administrative claim is timely filed on the last day of the 2-year period after the claim accrues, and if the agency does not act at all, the claimant may wait as long as he chooses, and "at any time thereafter" file suit and thereby exercise his option that the passage of time is *then* deemed a final denial?

■ Challenging as these questions are, they do not affect the questions in this case. With formal denial mailed on July 20, 1982, the last day to begin the action (if the 6 month period is the limit) was January 20, 1983. Every indication is that it was filed in Superior Court before that date, and under N.J. Court Rule R. 4:2–2, which matches F.R.Civ.P. 3, a civil action is commenced by filing a complaint with the court. Since the accident is alleged to have occurred February 13, 1981, the suit was also filed within two years after the date when the claim accrued. Thus, suit was timely filed, but it is too late to amend to substitute the United States as defendant.

The named defendants, Gonnelli and U.S. Postal Service, filed a verified petition for removal on February 18, 1983. Under what is called the "Federal Drivers' Act" (28 U.S.C. § 2679(b) through (e), added in 1961), a suit of this kind can be removed "at any time before trial," and so the usual 30 day limit for removal after receipt of the complaint "by service or otherwise," specified by 28 U.S.C. § 1446(b), does not apply.

■ Having removed the case, the United States moved to dismiss it for lack of subject-matter jurisdiction in the Superior Court before removal, and hence in this court after removal, under the well-recognized doctrine exemplified by *Gleason v. U.S.*, 458 F.2d 171 (CA–3, 1972) and *Stapleton v. $2,438,110.*, 454 F.2d 1210 (CA–3, 1972), (the "Newsboy Moriarty" case).

The general principle is long settled: where a federal court has exclusive jurisdiction, then if suit is mistakenly filed in a State court, removal does not result in the federal court acquiring jurisdiction because the removal jurisdiction is derivative. See,

e.g., *Lambert Run etc., v. Baltimore, etc.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); 14 Wright, Miller & Cooper, "Federal Practice and Procedure:" Jurisdiction, § 3721, note 35.

Plaintiffs argue, however, that this case is one over which the State courts have *concurrent* jurisdiction, pointing to 39 U.S.C. § 409, part of the 1970 statute which established the U.S. Postal Service as a governmental corporate entity. Paragraph (a) of that section does say that the United States district courts "shall have original *but not exclusive* jurisdiction" (emphasis added) over all actions brought by or against the Postal Service. It also makes such actions removable under "chapter 89", or 28 U.S.C. §§ 1441–1451.

But paragraph (c) directs that the provisions of chapter 171 of Title 28 (§§ 2671–2680), "and all other provisions of Title 28 relating to tort claims", are to apply to tort claims "arising out of" the activities of the Postal Service.

Taking par. (c) as written, and in the context of the section as a whole, the United States argues that the intent is to have the Federal Tort Claims Act and all related statutes control suits against the Postal Service that are tort claims from its activities; that the concurrent jurisdiction applies to suits *other than* tort claims.

Plaintiffs argue that the statute is ambiguous, and should be resolved in their favor.

There seems not to be any decision in this District or Circuit, or in the Supreme Court dealing with the question. The most pertinent decision appears to be *Stewart v. U.S.,* 655 F.2d 741 (CA–7, 1981). While the facts are not exactly the same, the principle is. It is not binding here, but since the court finds nothing pointing the other way, it believes that case should be followed here. If that view be wrong, a higher court can correct it. See, also, like decisions in *Peoples Gas, Light & Coke Co. v. U.S. Postal Service,* 658 F.2d 1182 (CA–7, 1981); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97 (CA–2, 1981); *Grasso v. United States Postal Service,* 438 F.Supp. 1231 (D–Conn., 1977).

Of course, it is not unknown for a statute specifying "exclusive" jurisdiction to be construed to intend "concurrent" jurisdiction with another court. See *Carrick v. First Crim. Ct,* 126 N.J.L. 598, 20 A.2d 509 (Sup., 1941), and *Lanning v. Hudson County Court of Common Pleas,* 127 N.J.L. 10, 21 A.2d 295 (Sup., 1941), aff'd 127 N.J.L. 604, 23 A.2d 397 (E. & A., 1941); but those cases were decided in another era and in a different context and so are not persuasive here.

There are jurisdictions in which suits may be filed out-of-time, but are treated as filed within time in a case where the suit was first filed within time but in the wrong jurisdiction and without any transfer mechanism. The policy behind such allowances is that, having received notice of the first, timely filed suit, later dismissed for lack of jurisdiction, the defendant is not harmed or prejudiced by a late filing in the court that does have jurisdiction. The mechanism serves as a substitute for transfer when there is no mechanism for formal transfer.

One example is a Rhode Island statute, mentioned in *Field v. Volkswagenwerk AG,* 626 F.2d 293 (CA–3, 1980), where Chief Judge Seitz (dissenting opinion) refers to R.I.Gen.Laws § 9–1–22 (1956), at p. 308.

Another example is a Pennsylvania statute, mentioned in *Weaver v. Marine Bank,* 683 F.2d 744 (CA–3, 1982), for the transfer of cases from federal to state courts under 42 Pa.C.S.A. § 5103(a) and (b). See, also, *Kaib v. Pennzoil Co.,* 545 F.Supp. 1267 (D–Pa., 1982).

The third example the court is aware of (and there may be others) is by judicial decision in *Galligan v. Westfield Centre Service, Inc.,* 82 N.J. 188, 412 A.2d 122 (1980). In this last instance, the Supreme Court of New Jersey no doubt has authority, under its constitutional assignment to promulgate rules of practice and procedure in the courts, to supplement N.J. Court Rule R. 4:3–2 to provide that a civil action will be deemed to have been commenced on the same date when the complaint was filed in an earlier suit in another court, provided

it is filed in the proper New Jersey court within 30 or 60 days after the suit in the other court was finally dismissed for lack of jurisdiction over the subject matter, or over the person of the defendant, or for forum non conveniens, or for abstention reasons, or the like. Such a rule change would formalize and make certain the principle of *Galligan* supra.

The court has considered carefully whether there is any legal basis for judicial application here of a principle like that in *Galligan*. The Superior Court complaint here was filed January 5, 1983, according to the colloquy at hearing, and so was begun in time, but in a court that had no subject matter jurisdiction and no jurisdiction over the United States.

■ The difficulty here is that the exclusive remedy is against the United States, by reason of the Federal Tort Claims Act, which is expressly drawn in by the Postal Service Act of 1970 along with all matters of practice and procedure in Title 28, U.S.C. and in rules promulgated thereunder.

Because the United States is a sovereign which can only be sued with its consent, and because it may condition its consent on any terms it chooses, the problem is one that only the Congress can deal with. The statutory provisions are explicit and leave no room for "construction", "interpretation" or what may be called "judicial legislation." The highest courts of the States have far more flexibility in that regard. See, e.g., *State v. DeSantis,* 65 N.J. 462, 323 A.2d 489 (1974); *Stewart v. 104 Wallace St.,* 87 N.J. 146, 432 A.2d 881 (1981), and Mr. Justice Clifford's concurring opinions in *Mirza v. Filmore Corp.,* 92 N.J. 390, at 401, 456 A.2d 518 (1983) and in *Cogliati v. Ecco etc. Corp.,* 92 N.J. 402, at 418, 456 A.2d 524 (1983).

Presumably, plaintiffs may file an amended complaint to name the United States as the defendant in the present suit (no leave is needed since there is no answer, see F.R.Civ.P. 15), and may file a fresh suit against the United States here, in order to establish a record on which to try those methods. But on the present record, the court sees no alternative but to dismiss.

## SUPPLEMENTAL OPINION

After the opinion of April 14th was distributed, the court received a form of order from defendants' attorney, to which plaintiffs' attorney objected.

On April 19, 1983, two days before the form of order was received here, plaintiffs filed an amended complaint in which they named the United States of America as defendant in place of the United States Post Office [sic]. This was possible without leave of court because, under the provisions of F.R.Civ.P. 15(a) no leave is needed when no responsive pleading has been served (where one is required, as the Answer was here).

On April 20, 1983, plaintiffs filed a new complaint. This was docketed as Civ. 83–1399, and it is essentially the same as the amended complaint in the first (removed) case.

Both the amended complaint and the new complaint name the United States of America as defendant, the only party who can be sued under the Federal Tort Claims Act, see 28 U.S.C. § 2674 and § 2679(a) and (b), and also name the individual, the driver, as well. Since the claim is for "personal injury * * * resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his employment", § 2679(b) (the Federal Drivers Act, 1961), the driver cannot be sued.

These new pleadings evidently were filed in order to make a proper record upon the basis of which to seek some remedy on appeal, the only avenue available in the absence of new legislation (which, of course, is not thereby precluded).

In the interests of speedy and inexpensive determination, F.R.Civ.P. 1, the two suits will be ordered consolidated for all purposes, F.R.Civ.P. 42(a).

The amended complaint and the new complaint, must be dismissed for the reasons set out in the Opinion dated April 14, 1983. The amendments naturally relate back to the original filing date of the first complaint in the Superior Court and removed here as Civ. No. 83–589. The provisions of F.R.Civ.P. 15(c) apply, and the

second paragraph deals specifically with the bringing in of the United States as a defendant.

The relation back is of no aid, however, because all it does is put the case in the same position it would have had if the United States were named defendant from the start. If it had been named at the start, this court would have obtained no jurisdiction on removal, as already explained in the earlier opinion.

■ So far as the new complaint is concerned, it is filed after the statutory time limit set by the Federal Tort Claims Act. The filing date is more than 2 years after the accrual of the cause of action, and more than 6 months after mailing of the denial of the claim.

In *Peterson v. United States,* 694 F.2d 943 (CA–3, 1982) the court said:

In the Federal Tort Claims Act, Congress waived the sovereign immunity of the United States. However, the injured person must comply with the applicable terms and the conditions prescribed by Congress, *Honda v. Clark,* 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967), including strict observance of the limitations period, *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), which cannot be extended by equitable considerations. *Gleason v. United States,* 458 F.2d 171 (3d Cir.1972). Congress has required an injured party to present his claim to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b).[5] A claim "accrues" when the injured party knows both the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). (Text of footnote 5 omitted)

Since the opinion of April 14th, the court has come to feel a further doubt that the federal courts can provide solutions to the problem there discussed, by the decisional process. The doubt arises from the decision in *Pillsbury Co. v. Conboy,* —— U.S. ——, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). In that case the court ruled that although an order to compel Conboy to testify before a grand jury resulted in a grant of immunity from the use of his testimony (or any information directly or indirectly derived from such testimony) against him in any criminal case, the witness still retained his Fifth Amendment right to decline to answer questions on depositions in a later civil case, even though the questions either repeated verbatim or closely tracked the immunized grand jury testimony. The "use immunity" flows directly from the statute, 18 U.S.C. § 6002, when there is an order entered in accordance with the statute.

The rationale pertinent here is found in segment B of the opinion, —— U.S. at ——, 103 S.Ct. at 616, 74 L.Ed.2d at 442 and in the text of footnote 20. That passage indicates that the decision whether to have the witness ordered to testify, with use immunity ensuing, is one to be made by the Attorney General and United States attorneys, who are in the Executive Branch, and not by the Judiciary.

The opinion records that the District Court ordered the witness to testify at the deposition, and then ruled his refusal a contempt, see —— U.S. at ——, 103 S.Ct. at 610, 74 L.Ed.2d at 436 and text accompanying footnote 3, as well as the text of footnote 5, —— U.S. on page ——, 103 S.Ct. on page 612, 74 L.Ed.2d on page 437, and the text of footnote 11, —— U.S. on page ——, 103 S.Ct. on page 613, 74 L.Ed.2d on page 438.

These passages imply that the mechanism for a judicially fashioned immunity may well lack authority, and may adversely affect such rulings as *U.S. v. Herman,* 589 F.2d 1191 (CA–3, 1978), *Gov't of Virgin Islands v. Smith,* 615 F.2d 964 (CA–3, 1980), and others in the line.

*Pillsbury* dealt with a subject field which the Supreme Court felt to be for the Congress to address because of the strong governmental interests involved. The analogy here is that like interests exist in the subject field of sovereign immunity. Unlike the courts of the sovereign states, which are generally not courts of limited jurisdiction, the judicial powers of the federal courts of appeal and of the districts, and to some extent of the Supreme Court, are of a narrower, delegated nature.

Thus, whatever the "equities" of cases like those here, it is probable that there is no authority for a judicial remedy.

Since all the pertinent facts are in the present record, the court sees no need to have a fresh cycle of motions and will enter a final judgment covering both consolidated cases.

Of course, if plaintiffs wish to make a further presentation here in order to compile a record, they are free to file a motion for reconsideration or reargument. The court will allow it to be made on 10 days' notice and it should be served and filed on or before May 6, 1983.